IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**<br><br>　　Plaintiff,<br><br>v.<br><br>**JOSHUA ERTLE,** *et al.*<br><br>　　Defendants. | Civil Action No.: 1:25-cv-00351 |

**DEFENDANT JOSHUA ERTLE'S ANSWER TO COMPLAINT FOR INTERPLEADER**

COMES NOW Defendant Joshua Ertle ("Mr. Ertle"), for himself individually, by and through undersigned counsel, and for his Answer to the Complaint for Interpleader ("Complaint") filed against him by Plaintiff, Massachusetts Mutual Life Insurance Company ("Plaintiff" or "MassMutual"), states:

**NATURE OF THE ACTION**

1. Paragraph 1 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the death benefit process (the "Policy Proceeds") that are payable under insurance policies (the "Policies") issued on the life of Alyssa Clark (the "Insured" or "Ms. Clark"). Mr. Ertle denies that the Defendant George Hansen ("Mr. Hansen") is entitled to the Policy Proceeds under the Policies.

**PARTIES AND JURISDICTION**

2. Mr. Ertle admits the averments of paragraph 2 of the Complaint.

1

3. Mr. Ertle admits that he is the long-term partner of Ms. Clark and that he and Ms. Clark resided together in Reston, Virginia. Mr. Ertle denies that he was the former partner of Ms. Clark and denies the remaining averments in paragraph 3.

4. Mr. Ertle lacks sufficient information to deny or admit the averments in paragraph 4 and therefore denies the averments in paragraph 4.

5. Paragraph 5 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle denies the averments in paragraph 5.

6. Paragraph 6 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle states that he does not object to jurisdiction.

7. Paragraph 7 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle states that he does not object to venue.

## FACTUAL BACKGROUND

8. Mr. Ertle admits the averments of paragraph 8 of the Complaint. Mr. Ertle states that Exhibit A and Exhibit B of the Complaint speak for themselves. Mr. Ertle further states that he has no knowledge as to the veracity or authenticity of Exhibits A and B of the Complaint and therefore, to the extent further response is required, denies the averments in and related to Exhibits A and B.

9. Mr. Ertle denies the averments in paragraph 9.

10. Mr. Ertle does not possess sufficient information to admit or deny the averments in paragraph 10 of the Complaint and therefore denies the averments in paragraph 10.

11. Mr. Ertle admits the averments in paragraph 11 of the Complaint.

12. Mr. Ertle admits the averments in paragraph 12 of the Complaint.

13. Mr. Ertle states that the correspondence from counsel for Mr. Ertle speaks for itself and refers to those documents. To the extent further response is required, Mr. Ertle denies the averments in paragraph 13.

14. Mr. Ertle does not possess sufficient information to admit or deny the averments in paragraph 14 of the Complaint and therefore denies the averments in paragraph 14.

15. Mr. Ertle does not possess sufficient information to admit or deny the averments in paragraph 15 of the Complaint and therefore denies the averments of paragraph 15.

16. Mr. Ertle admits the allegation in paragraph 16 of the Complaint to the extent that Mr. Ertle and Mr. Hansen have not reached an agreement regarding the distribution of the Policy Proceeds. Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. To the extent further response is required, Mr. Ertle denies the remaining averments in paragraph 16.

17. Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies and denies the remaining averments in paragraph 17..

18. Paragraph 18 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments in paragraph 18.

**CAUSE OF ACTION IN INTERPLEADER AGAINST ALL DEFENDANTS**

19. Paragraph 19 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of

the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments in paragraph 19.

20. Paragraph 20 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments in paragraph 20.

21. Paragraph 21 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments in paragraph 21.

22. Paragraph 22 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments of paragraph 22.

23. Paragraph 23 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments of paragraph 23.

24. Paragraph 24 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Mr. Ertle admits that he is the proper beneficiary of the Policy Proceeds under the Policies. Mr. Ertle denies that Mr. Hansen is entitled to the Policy Proceeds under the Policies. Mr. Ertle denies the remaining averments of paragraph 24.

Mr. Ertle denies the averments in the unnumbered WHEREFORE paragraph.

## JOSHUA ERTLE'S AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claim is barred by contract.

### Second Affirmative Defense

Plaintiff's claim for fees and costs are barred as the processing of claims is a service for which Ms. Clark already paid premiums for and because such processing is in the normal course of business.

### Third Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by duress.

### Fourth Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by estoppel.

### Fifth Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by failure of consideration.

### Sixth Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by fraud.

### Seventh Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by illegality.

### Eighth Affirmative Defense

Mr. Hansen's claims to the proceeds are barred by waiver.

Mr. Ertle reserves the right to amend and/or supplement this Answer and his Affirmative Defenses and other defenses, and/or to assert additional defenses as discovery, litigation, and investigation are ongoing.

## **RELIEF REQUESTED**

WHEREFORE, Defendant Joshua Ertle respectfully requests that this Court dismiss the Complaint; enter judgment declaring that Joshua Ertle is the sole beneficiary of the death benefit payable under the Policies, including accrued interest, if any; the Policy Proceeds under the Policies be issued to Joshua Ertle and that costs of suit, reasonable attorney's fees, and such other and further relief as this Court deems just and proper.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**<br><br>    Plaintiff,<br><br>v.<br><br>**JOSHUA ERTLE,** *et al.*<br><br>    Defendants. | Civil Action No.: 1:25-cv-00351 |

### DEFENDANT JOSHUA ERTLE'S COUNTERCLAIM AGAINST MASSACHUSETTES MUTUAL LIFE INSURANCE COMPANY AND CROSS-CLAIM AGAINST DEFENDANT GEORGE HANSEN

COMES NOW Defendant / Counter-Plaintiff / Cross-Plaintiff Joshua Ertle ("Mr. Ertle"), by and through undersigned counsel, to state his counterclaim against Plaintiff / Counter-Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") and his cross-claim against Defendant / Cross-Defendant George Hansen ("Mr. Hansen") as follows:

### STATEMENT OF FACTS

1. Plaintiff Massachusetts Mutual Life Insurance Company ("Plaintiff" or "MassMutual") filed this action asking the Court to determine the proper beneficiary of the death benefit process (the "Policy Proceeds") that are payable under insurance policies (the "Policies") issued on the life of Alyssa Clark (the "Insured" or "Ms. Clark").

7

2. On or about February 11, 2020, MassMutual issued Whole Life Policy Number 22685539 and Term Life Policy Number 24591930 (the "Policies") insuring the life of Ms. Clark and Mr. Ertle was the named beneficiary of both Policies at the time of their issuance.

3. Mr. Ertle was Ms. Clark's long term partner of 8 years, beginning their relationship on or about December 1, 2016.

4. During their long term partnership, Mr. Ertle and Ms. Clark cohabitated in their home in Reston, Virginia.

5. Mr. Ertle and Ms. Clark combined and comingled their finances.

6. Mr. Ertle and Ms. Clark shared bank accounts.

7. Mr. Ertle and Ms. Clark intended to provide for each other in case of any tragedy.

8. Mr. Ertle and Ms. Clark designated each other as the beneficiaries of their life insurance policies.

9. Ms. Clark also made Mr. Ertle the beneficiary of her retirement account.

10. Ms. Clark suffered from significant mental health conditions.

11. During her relationship with Mr. Ertle, Ms. Clark was employed as a Licensed Clinical Social Worker at Capitol Hill Consortium & Consultation LLC.

12. Due to her mental health conditions, Ms. Clark took numerous leaves of absence from employment, relying during these times on Mr. Ertle for financial support.

13. During her periods of absence from work, Mr. Ertle provided the funds to pay the premiums to MassMutual on behalf of Ms. Clark.

14. Ms. Clark's mental health conditions became substantially worse in mid 2024. Her condition began deteriorating rapidly in summer 2024.

15. On or about September 15, 2024, Ms. Clark, while in a mental health crisis, left the home she shared with Mr. Ertle in Reston, Virginia, abandoning all her personal belongings.

16. Upon information and belief, Ms. Clark contacted her father at approximately 7 a.m. on or about September 15, 2024 to inform him she was running away, and appeared to be in an extremely paranoid state.

17. Upon information and belief, Ms. Clark's father spoke intermittently to Ms. Clark through the day by telephone, and spoke to police when police expressed concern regarding Ms. Clark's extreme and erratic behavior in public settings.

18. Upon information and belief, Ms. Clark arrived at her mother's residence in Maryland on or about September 15, 2024.

19. Upon information and belief, Ms. Clark's paranoia and erratic behavior continued at her mother's residence, and due to her paranoia, she was unable to effectively remain with her mother.

20. Upon information and belief, in addition to erratic behavior and paranoid communications directed at Mr. Ertle, Ms. Clark also engaged in erratic behavior and paranoid communication with both her parents and her sister, as well as various friends and acquaintances.

21. Upon information and belief, on or about September 20, 2024, Ms. Clark arrived near her sister's home in a state of extreme paranoia and exhibiting erratic behavior.

22. Upon information and belief, on or about September 20, 2024, two friends of Ms. Clark's met Ms. Clark near her sister's home to try to persuade her to obtain help.

23. Upon information and belief, on or about September 20, 2024, Ms. Clark, accompanied by her two friends and her mother, was seen at Saint Agnes Hospital in Baltimore, Maryland.

24. Upon information and belief, Ms. Clark was seen in the emergency department by Dr. Antony G Kironji.

25. Upon information and belief, Ms. Clark's friends and her mother asked the medical staff at Saint Agnes to admit or otherwise help Ms. Clark.

26. Upon information and belief, the medical staff at Saint Agnes informed Ms. Clark's mother and friends that without Ms. Clark's consent, they could not hold her and treat her.

27. Upon information and belief, on or about September 21, 2024, while still exhibiting serious signs of paranoia and erratic behavior, Ms. Clark left Saint Agnes.

28. Upon information and belief, Ms. Clark refused to stay with her mother, and soon after her hospitalization Ms. Clark left her mother's residence.

29. Upon information and belief, as Ms. Clark was not working Ms. Clark had no income and was in financial distress in late September 2024.

30. Upon information and belief, Ms. Clark contacted Mr. Hansen to ask for money, and Mr. Hansen loaned Ms. Clark approximately $4,000.00.

31. Upon information and belief, Mr. Hansen had contact information for Ms. Clark's parents. Nonetheless, Mr. Hansen did not contact Ms. Clark's family during this clear medical emergency.

32. Upon information and belief, prior to asking Mr. Hansen for money, Ms. Clark last saw Mr. Hansen in person in 2017.

33. Upon information and belief, Mr. Hansen was aware of Ms. Clark's long term mental health issues.

34. Upon information and belief, Mr. Hansen was aware that by September 2024, Ms. Clark was in a paranoid state exhibiting erratic behavior and in a severe mental health crisis.

35. Upon information and belief, Mr. Hansen held himself out to Ms. Clark to be a trusted confidant and advisor.

36. Upon information and belief, Mr. Hansen parlayed their prior friendship and Ms. Clark's distress into a confidential relationship during her time of crisis.

37. Upon information and belief, Mr. Hansen was over ten years Ms. Clark's senior.

38. Upon information and belief, Mr. Hansen purposefully communicated with Ms. Clark in a manner to make Ms. Clark trust him and to allow him to guide her.

39. Upon information and belief, Mr. Hansen was aware that by late September 2024, Ms. Clark had alienated and excluded her long-term partner, her parents, her sister, and her friends, leaving Mr. Hansen in a position of control over Ms. Clark.

40. On or about September 27, 2024, soon after being released from Saint Agnes due to refusal to accept treatment and no longer near family, Ms. Clark changed the beneficiary on her life insurance policy from her long term partner Mr. Ertle, to Mr. Hansen who she had not seen since 2017 and who recently loaned her money.

41. Upon information and belief, either explicitly or implicitly, Mr. Hansen encouraged Ms. Clark to change her life insurance beneficiary designation.

42. Upon information and belief, Mr. Hansen was aware of the change made by Ms. Clark, and failed to inform her parents or family regarding the matter.

43. Upon information and belief, Ms. Clark failed to include Mr. Hansen's address in her beneficiary change, listing instead an address in Reston, Virginia.

11

44. Upon information and belief, Ms. Clark's failure to properly list Mr. Hansen's address illustrates her extreme confusion and inability to designate Mr. Hansen as her beneficiary or, in the alternative, her anxiety illustrating that the designation change was not undertaken knowingly and willingly by Ms. Clark.

45. Upon information and belief, Ms. Clark failed to properly list other personal identifiers for Mr. Hansen such as his birthdate.

46. Upon information and belief, Ms. Clark's failure to properly list Mr. Hansen's birthday and other personal identifying information illustrates her extreme confusion and inability to designate Mr. Hansen as her beneficiary or, in the alternative, her anxiety illustrating that the designation change was not undertaken knowingly and willingly by Ms. Clark.

47. Indeed, due to the lack of identifying information as to Mr. Hansen, besides the name "George Hansen" it is not clear to which George Hansen Ms. Clark could be referring.

48. Further, upon information and belief, Defendant / Cross-Defendant George Hansen does not have the address or the listed birthdate in the designation of beneficiary change.

49. Upon information and belief, after changing beneficiaries for her life insurance policies, Ms. Clark continued to exhibit paranoid and erratic behavior.

50. Upon information and belief, Ms. Clark refused to stay with her mother or responsible friends, but instead chose to live in her car and in a variety of hotel rooms.

51. Upon information and belief, Ms. Clark's mental health continued to deteriorate through the fall.

52. Upon information and belief, Ms. Clark was admitted at Frederick Health Hospital on or about November 4, 2024 and remained in-patient until on or about November 14, 2024 for mental health treatment.

53. After her discharge, Ms. Clark continued exhibiting erratic behavior, including numerous driving related concerns such as driving the wrong way down a road.

54. On November 21, 2024, Ms. Clark died in a car accident.

55. After the death of Ms. Clark, Mr. Ertle made a claim for the Policies.

56. MassMutual informed Mr. Ertle that he had been replaced as beneficiary of the Policies.

## COUNT ONE – DECLARATORY JUDGMENT
### (against MassMutual and Mr. Hansen)

57. Mr. Ertle restates and re-alleges the averments in the preceding paragraphs.

58. Mr. Ertle is entitled to declaratory relief pursuant to 22 U.S.C. § 2201(a), as the parties are engaged in an actual controversy, and Mr. Ertle is an interested party seeking such declaration of the proper beneficiary of the death benefit owed to him as a result of the death of Ms. Clark, pursuant to 38 U.S.C. § 1965, et seq., the rules and regulations promulgated thereunder and/or the laws of equity.

59. Here, the facts illustrate that Ms. Clark lacked the capacity to change beneficiaries on or about September 27, 2025.

60. Accordingly, Mr. Ertle is the sole beneficiary of the Policies and is entitled to the payment of Policy Proceeds under the Policies.

61. Under the circumstances of this case, the only just result is for this Court to declare Mr. Ertle the proper beneficiary of the Policies.

62. In the alternative, the designation of Mr. Hansen is fatally flawed as Defendant / Cross-Defendant does not have an address or birthdate that matches the change allegedly made by Ms. Clark.

63. The failure to properly identify Mr. Hansen renders the change of designation of beneficiary void.

64. Accordingly, Mr. Ertle is the sole beneficiary of the Policies and is entitled to the payment of Policy Proceeds under the Policies.

65. WHEREFORE, Defendant / Counter-Plaintiff / Cross-Plaintiff Joshua Ertle respectfully requests that this honorable Court enter a judgment declaring that Joshua Ertle is the sole beneficiary of all Policy Proceeds and ordering that all Policy Proceeds be promptly paid to Mr. Ertle, with interest.

**COUNT TWO– DECLARATORY JUDGMENT**
**(against Mr. Hansen, in the alternative)**

66. Mr. Ertle restates and re-alleges the averments in the preceding paragraphs.

67. Mr. Ertle is entitled to declaratory relief pursuant to 22 U.S.C. § 2201(a), as the parties are engaged in an actual controversy, and Mr. Ertle is an interested party seeking such declaration of the proper beneficiary of the death benefit owed to him as a result of the death of Ms. Clark, pursuant to 38 U.S.C. § 1965, *et seq.*, the rules and regulations promulgated thereunder and/or the laws of equity.

68. Mr. Hansen obtained the change in designation of beneficiary by Ms. Clark due to Mr. Hansen's undue influence on Ms. Clark.

69. At the time Ms. Clark made the beneficiary change, Ms. Clark was in a full mental health crisis, estranged and isolated from her long-term partner, her parents, her sister, and responsible friends.

70. Mr. Hansen was aware of Ms. Clark's mental health crisis as well as her isolation.

71. Less than a week before Ms. Clark made the beneficiary designation change, Ms. Clark was in an emergency room due to her mental health crisis.

72. At the time Ms. Clark made the change in beneficiary, Ms. Clark had no income and little access to money.

73. At the time Ms. Clark made the change in beneficiary, Ms. Clark was staying in her car or in assorted hotel rooms.

74. Upon information and belief, in crisis Ms. Clark contacted Mr. Hansen to obtain a loan of approximately $4,000.00 in order to live.

75. Upon information and belief, concurrent with the change in beneficiary, Ms. Clark was wholly dependent on Mr. Hansen's loan for funds.

76. Upon information and belief, Mr. Hansen, an older man, had held himself out to Ms. Clark to be a trusted confidant and a guiding influence.

77. Upon information and belief, after Ms. Clark appealed to Mr. Hansen for help, Mr. Hansen purposefully refused to communicate with her family about the crisis, instead deciding to exercise dominion and control over Ms. Clark.

78. Given Ms. Clark's mental health crisis, financial peril, and isolation, Mr. Hansen's domination and influence were exercised upon Ms. Clark to such an extent that Ms. Clark could not exercise free judgment regarding the change in beneficiary designation.

79. Accordingly, Mr. Hansen's undue influence over Ms. Clark renders the change of designation of beneficiary void.

80. WHEREFORE, Defendant / Counter-Plaintiff / Cross-Plaintiff Joshua Ertle respectfully requests that this honorable Court enter a judgment declaring that Joshua Ertle is the sole beneficiary of all Policy Proceeds and ordering that all Policy Proceeds be promptly paid to Mr. Ertle, with interest.

### COUNT THREE-TORTIOUS INTERFERENCE
(against Mr. Hansen)

81. Mr. Ertle restates and re-alleges the averments in the preceding paragraphs.

82. Upon information and belief, Ms. Clark contacted Mr. Hansen and asked Mr. Hansen for a loan of money during her mental health crisis and isolation from her long-term partner, parents, sister, and friends due to the mental health crisis.

83. Upon information and belief, Mr. Hansen, knowing of Ms. Clark's history of mental health crises, sought to continue to isolate Ms. Clark.

84. Upon information and belief, Mr. Hansen had contact information for Ms. Clark's family.

85. Upon information and belief, Mr. Hansen did not contact Ms. Clark's family but instead loaned Ms. Clark money despite her mental health crisis.

86. Upon information and belief, Mr. Hansen either explicitly or implicitly required Ms. Clark to designate him as a life insurance beneficiary.

87. Alternatively, upon information and belief, Mr. Hansen used undue influence to have Ms. Clark designate him as her beneficiary.

88. Mr. Hansen, after Ms. Clark's death, informed Ms. Clark's parent that he was aware that Ms. Clark designated him as her beneficiary.

89. Despite having contact information for Ms. Clark's family, Mr. Hansen did not contact Ms. Clark's family to inform them that she was making an individual who she had not seen in person since 2017 her beneficiary.

90. Upon information and belief, during the last weeks of her life, Ms. Clark communicated numerous last wishes including payment of funds to Mr. Hansen by text message.

91. Upon information and belief, Mr. Hansen failed to contact Ms. Clark's family or authorities regarding Ms. Clark's clear state of mental health crisis.

92. Mr. Hansen strategically avoided any communication with Ms. Clark's family until after her death, and continued to control Ms. Clark financially, knowing that Mr. Hansen was now Ms. Clark's life insurance beneficiary, in order to enrich himself at the peril of Ms. Clark, her family, and Mr. Ertle.

93. As a result of Mr. Hansen's tortious and wrongful conduct, Mr. Ertle was harmed due to the removal of Mr. Ertle as beneficiary of the Policy Proceeds.

94. But for Mr. Hansen's tortious interference, MassMutual would have paid Mr. Ertle the Policy Proceeds in November 2024.

95. Now, due to Mr. Hansen's tortious interference, Mr. Ertle may entirely lose out on the Policy Proceeds or the Policy Proceeds will be delayed by at least 6 months and possibly years.

96. As a result of Mr. Hansen's tortious and wrongful conduct, Mr. Ertle was harmed due to emotional distress, legal costs, and the interest value of the policy proceeds in November 2024 through final judgment in this action.

97. WHEREFORE, Defendant / Counter-Plaintiff / Cross-Plaintiff Joshua Ertle respectfully requests that this honorable Court enter a judgment in favor of Joshua Ertle and against George Hansen in the amount of $1,900,000.00 plus pre-judgment interest from November 22, 2024 to present and continuing until the date of final judgment, damages due to emotional distress, attorney's fees, and costs.

## RELIEF REQUESTED

WHEREFORE, having stated his Counterclaim against Plaintiff / Counter Defendant Massachusetts Mutual Life Insurance Company and Cross-Claim against Defendant / Cross Defendant George Hansen, Defendant / Counter Plaintiff / Cross Plaintiff Joshua Ertle respectfully requests that this honorable Court enter a declaratory judgment stating that Joshua Ertle is the sole beneficiary of the death benefit payable under the Policies, including accrued interest (if any), order that Massachusetts Mutual Life Insurance Company promptly pay all death benefits under the Policies to Joshua Ertle, including accrued interest (if any), enter an order of judgment against George Hansen and in favor of Joshua Ertle in the amount of $1,900,000.00 plus pre-judgment interest, an award of damages for emotional distress, attorney's fees, and costs.

## JURY DEMAND

Joshua Ertle respectfully requests a trial by jury on all issues so triable.

DATED: April 29, 2025

Respectfully submitted,

**THE PELS LAW FIRM L.L.C.**

/s/ Jon D. Pels.
Jon D. Pels, Esq. (VA. Bar No. 39888)
jpels@pelslaw.com
Nina Basu, Esq. (*Motion for Admission pro hac vice to be filed)*
The Pels Law Firm
4845 Rugby Avenue, Third Floor
Bethesda, MD. 20814
Phone: (301) 986-5570
Fax: (301) 986-5571
*Counsel for Defendant Joshua Ertle*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this April 29, 2025, I caused a true and correct copy of the foregoing to be filed via the Court's CM/ECF, which will send notice of electronic filing to all counsel of record that are registered users.

/s/ Jon D. Pels
Jon D. Pels, Esq. (VA Bar No. 39888)